# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

The Georgia Advocacy Office, et al.,

      Plaintiffs,

v.                             Civil Action No. 1:17-CV-3999-MLB

State of Georgia, et al.,

      Defendants.

_____

## PLAINTIFFS' [PROPOSED] RESPONSE TO DEFENDANTS' "NOTICE OF SUPPLEMENTAL AUTHORITY"

Defendants' July 12 "Notice of Supplemental Authority" (the "Notice," ECF No. 288) argues that the U.S. Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. ____, 144 S. Ct. 2244 (2024), supports summary judgment in Defendants' favor. Defendants' argument is both improper, *see* ECF No. 290,[1] and wrong.[2] Without waiving Plaintiffs' objection to this improper

---

[1] Plaintiffs further address this issue in "Plaintiffs' Revised Motion to Enforce Briefing Limits and Disregard 'Notice of Supplemental Authority' or, in the Alternative, for Leave to File a Response," filed herewith.

[2] Defendants filed a similar "Notice of Supplemental Authority" in *United States v. Georgia*, Civil Action No. 1:16-cv-03088-ELR, making this identical argument. ECF No. 492, Def.'s Notice of Suppl. Authority, *United States v. Georgia*, No. 1:16-

argument, *see id.*, this Response briefly explains why Defendants' substantive arguments are wrong and *Loper Bright* should not alter this Court's review of the parties' pending motions for summary judgment on claims brought by Plaintiffs under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794.

First, Defendants are wrong that *Loper Bright* casts doubt on the validity of the ADA regulation that identifies forms of discrimination prohibited by the ADA, which is 28 C.F.R. § 35.130 (the "DOJ Rule"). *Loper Bright*—which overruled *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)— addresses the appropriate level of deference courts should give to agency regulations when Congress has **not** "directly spoken to the precise question at issue" and thus congressional intent is unclear. *Loper Bright*, 144 S. Ct. at 2254, 2264 (citing *Chevron*, 467 U.S. at 842). But the DOJ Rule has been ratified by Congress. Therefore, under *Loper Bright*, it has the force of law and its validity does not depend on *Chevron* deference. Second, Defendants misconstrue the ADA's statutory language and Congress's stated intent. Both the ADA's text and binding Supreme

---

cv-03088-ELR (N.D. Ga. July 12, 2024). In response, the United States filed a motion for leave to file a response and a memorandum in support. U.S.' Mot. for Leave to File Resp. to Def.'s Notice of Suppl. Authority & Incorp. Mem. in Supp., ECF No. 493, *United States v. Georgia*, Civil Action No. 1:16-cv-03088-ELR, (N.D. Ga. July 19, 2024). Plaintiffs agree with the United States' response as set forth therein.

Court precedent refute Defendants' premise that the ADA restricts ADA liability, and *Loper Bright* affects neither.   Third, Defendants mischaracterize Plaintiffs' claims in this case, which do not depend on the DOJ Rule.  Plaintiffs' claims are based primarily on the text of the ADA and the Supreme Court's authoritative reading of it.  Accordingly, *Loper Bright* neither undermines Plaintiffs' claims nor changes this Court's summary judgment analysis.

## I.    **The DOJ Rule Has the Force of Law Under *Loper Bright***

Defendants assert that "*Loper Bright* explains that judicial deference to the DOJ Rule would be particularly inappropriate because—unlike in other statutes— when enacting the ADA, Congress did not expressly delegate to the Justice Department any authority to 'give meaning to a particular term.'"  ECF No. 288 at 4 (citing *Loper Bright*, 144 S. Ct. at 2263 n.5).  Defendants try to use this to reinforce their summary judgment briefing, where they seek to avoid liability by arguing that the statutory term "provide" and regulatory term "administer" have different meanings.  *Id.* at 5.

But Defendants' arguments ignore *Loper Bright*'s next sentence, which explains that some statutes "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme."  *Loper Bright*, 144 S. Ct. at 2263 (citation omitted).

3

And when this is the case, "the role of the reviewing court" is to "effectuate the will of Congress." *Id.* This is precisely what Congress did with respect to the ADA.

When Congress enacted the ADA, it did not merely authorize effectuating regulations, it directed the Attorney General to promulgate them. Congress also mandated that the ADA shall not "be construed to apply a lesser standard than the standards applied under" Section 504 of the Rehabilitation Act or its "regulations." 42 U.S.C. § 12201(a). To this end, the ADA expressly incorporates the Section 504 regulations into the ADA and requires the Attorney General's ADA regulations, with respect to state and local government services, be consistent with not only the ADA as a whole, but also with the "coordination regulations" implementing Section 504 of the Rehabilitation Act promulgated by the Department of Health, Education, and Welfare (HEW). 42 U.S.C. § 12134(b); *see also Shotz v. City of Plantation*, 344 F.3d 1161, 1179 (11th Cir. 2003) (finding that "Congress expressly authorized the Attorney General to make rules with the force of law interpreting and implementing [Title II of the ADA]").

Acting pursuant to Congress's directive, in 1991, within months of the passage of the ADA, the Attorney General, after notice-and-comment rulemaking, promulgated ADA regulations that tracked HEW's coordination regulations. *Compare* 28 C.F.R. § 41.51 (Section 504 coordination regulations), *with* 28 C.F.R. § 35.130 (Title II implementing regulations). A side-by-side comparison of the

4

HEW regulations and the current DOJ Rule implementing Title II of the ADA makes clear that the DOJ Rule at issue reflects a clear mandate by Congress which, having been ratified by Congress, has the force of law irrespective of *Chevron* or *Loper Bright*.[3] *See* 28 C.F.R. § 41.51(b)&(d); 28 C.F.R. § 35.130.  In other words, the ADA regulations, including the DOJ Rule, are an expression of the will of Congress.  And, as the Eleventh Circuit has held: "The resulting rules are therefore entitled to controlling weight unless they are procedurally flawed, substantively arbitrary and capricious, or plainly contradict the statute." *Shotz*, 344 F.3d at 1179.  They are not and do not.[4]

Accordingly, Defendants cannot dodge responsibility for their discriminatory actions by distinguishing "provide" in the ADA statute from "administer" in the

---

[3] In its response to the State's "Notice" in *United States v. Georgia*, the United States set forth a chart showing the parallel language in the Section 504 regulations and the "DOJ Rule" at 28 C.F.R. § 35.130.  Pl.'s Proposed Resp. to Def.'s Notice of Suppl. Authority, ECF No. 493-1, at 5-6, *United States v. Georgia*, Civil Action No. 1:16-cv-03088-ELR (N.D. Ga. July 19, 2024).

[4] That the ADA regulations were contemporaneously issued and have been consistently construed over time lends weight to their validity.  *See Bragdon v. Abbott*, 524 U.S. 624, 642-45 (1998) (declining to rely on *Chevron* and applying the ADA and Section 504 regulations because of the "uniformity of the administrative and judicial precedent construing" both statutes).  As the Supreme Court has stated, courts should generally defer to "contemporaneous regulations issued by the agency responsible for implementing a congressional enactment." *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 634 (1984); *see also Loper Bright*, 144 S. Ct. at 2283 (Gorsuch, J., concurring) (collecting cases dating back to 1803).

ADA implementing regulations.[5]  As made clear above, Congress ordered the Attorney General to promulgate ADA regulations consistent with the HEW's regulations implementing Section 504.  The Attorney General did precisely that. Under both *Loper Bright* and prior law, these regulations—including the DOJ Rule—have the force of law.  *Loper Bright*, 144 S. Ct. at 2264 (holding that courts should defer when Congress has "directly spoken to the precise question at issue") (internal quotation marks omitted); *United States v. Bd. of Comm'rs*, 435 U.S. 110, 134 (1978) (courts must defer to regulations that Congress ratifies in the course of enacting legislation); *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995) (citing *Bd. of Comm'rs*) (emphasis added) (internal citations omitted) ("[B]ecause Congress mandated that the ADA regulations be patterned after the section 504 coordination regulations, the former regulations have the force of law.").

## II.    <u>The ADA's Text Makes the State Liable if It Administers GNETS</u>

Even setting the regulations aside, the language of the ADA itself does not support Defendants' arguments and thus *Loper Bright* does not apply.  Although Defendants point the Court to the term "provide" as it appears in 42 U.S.C. § 12131(2), that is the wrong section of the ADA.  Section 12131(2) defines a

---

[5] Notably, "provide" and "administer" are also synonyms, which makes Defendants' argument merely one of semantics.  *See* Administer, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/administer (last visited July 30, 2024) (defining "administer" as "to provide or apply").

"qualified individual with a disability," *i.e.*, a proper ADA **plaintiff**. *Id.* What matters here, however, is the ADA text that defines a proper ADA **defendant**. That text appears in 42 U.S.C. § 12132, which prohibits both exclusion from the "services, programs, or activities **of** a public entity" and "discrimination **by** any such entity." *Id.* It is undisputed that GNETS is a program of the state. Indeed, Defendants admit for summary judgment purposes that they created both GNETS and the regulation that governs it. *See* ECF No. 243 ¶ 155. Likewise, it is undisputed that students are segregated in GNETS, and segregation is discrimination. *See, e.g.*, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999) ("Unjustified isolation … is properly regarded as discrimination.").

In any case, Congress made clear that Title II of the ADA covers state entities that administer programs and activities. In enacting the ADA, Congress "provide[d] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," including "such forms of discrimination against individuals with disabilities" as their "isolat[ion] and segregat[ion]." 42 U.S.C. § 12101(a)(2), (b)(1). Congress's mandate is broad and applies to "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1); *see*

*also Pa. Dep't. of Corrs. v. Yeskey*, 524 U.S. 206, 209-12 (1998) (discussing the breadth of Title II's coverage).[6]

This broad statement of intent means the Supreme Court's elimination of *Chevron* deference does not affect this Court's analysis of who is the proper Defendant here, because Congress has made clear that it intended for the ADA to reach everything a state entity does, including administration. After all, as the Supreme Court has recognized, "Congress enacted Title II against a backdrop of pervasive unequal treatment in the *administration* of state services and programs," including in "the *administration* of a wide range of public services, programs, and activities, including . . . public education." *Tennessee v. Lane*, 541 U.S. 509, 524-25 (2004) (emphasis added) (citations omitted). Moreover, the very purpose of Title II of the ADA is to "make applicable the prohibition against discrimination on the basis of disability, currently set out in regulations implementing section 504 of the Rehabilitation Act of 1973, to all programs, activities, and services" of state and local government. H.R. Rep. No. 101-485, pt. 2 at 84 (1990), 1990 U.S.C.C.A.N. 303, 366. Those Section 504 regulations expressly mandate that covered entities "shall *administer* programs and activities in the most integrated setting appropriate

---

[6] Although the State argues "Congress's choice of language reflects limited forms of liability against states," ECF No. 288 at 6, it cites no ADA text to support this, and none exists.

8

to the needs of qualified handicapped persons." 28 C.F.R. § 41.51(d) (emphasis added).

Whether Defendants administer GNETS is an issue already briefed on summary judgment. *See, e.g.*, ECF No. 188-1 at 2, 7-23. For all the reasons set forth above, nothing in *Loper Bright* changes that analysis.

### III.    The *Loper Bright* Decision Does Not Impact Plaintiffs' Claims

Finally, Defendants' second and third arguments, ECF No. 288 at 5-7, ignore Plaintiffs' actual claims, which are not dependent on *Chevron* deference where, as here, Congress has directly spoken to the issues.[7] Plaintiffs' claims are rooted in the language of the ADA itself, express congressional intent, and the Supreme Court's decision in *Olmstead*.

The Complaint sets forth three counts. ECF No. 1 ¶¶ 71, 154-66. The first two allege that the State's segregation of students with disabilities in the GNETS program is discrimination in violation of Title II of the ADA and Section 504 of the Rehabilitation Act, respectively. ECF No. 1, ¶¶ 154-60 (Count I), 161-65 (Count

---

[7] Although Defendants contend that Plaintiffs' ADA claims "rely heavily" on "court decisions from outside of the Eleventh Circuit that almost universally deferred to" the regulations implementing the ADA, ECF No. 288 at 3, none of the cases that Defendants cite in support of this contention rely on *Chevron* deference. Even if they did, *Loper Bright* expressly held that "we do not call into question prior cases that relied on the *Chevron* framework," the holdings of which "are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Loper Bright*, 144 S. Ct. at 2273.

II).  These counts cite to the relevant statutes, *id.*, which prohibit discriminating on the basis of disability, 42 U.S.C. § 12132, including, as Congress explained, "segregation, and relegation to lesser services, programs, activities, benefits, … or other opportunities," including in "such critical areas as … education," 42 U.S.C. § 12101(a)(3)&(5).  The Complaint also cites the Supreme Court's decision in *Olmstead.*, 527 U.S. at 600, finding that "unjustified institutional isolation of persons with disabilities is a form of discrimination" under Title II.  ECF No. 1 ¶ 71.

While both Plaintiffs' Complaint and the *Olmstead* decision discuss certain provisions of the DOJ Rule, the majority's central holding in *Olmstead*—that unnecessary isolation and segregation of people with disabilities constitutes discrimination under Title II—is based on the text of the statute (the ADA), and not the DOJ Rule.[8]  As the Court explained: "Ultimately, in the ADA, enacted in 1990, Congress not only required all public entities to refrain from discrimination, *see* 42 U.S.C. § 12132; additionally, in findings applicable to the entire statute, Congress explicitly identified unjustified 'segregation' of persons with disabilities as a 'form of discrimination.'"  *Olmstead*, 527 U.S. at 597.  Thus, Plaintiffs' claims are supported by the unambiguous language of the ADA and Congress's express intent set forth in the statute.  As a result, *Loper Bright* does not impact Plaintiffs' claims.

---

[8] The Supreme Court in *Olmstead* expressly stated that it did not rely upon *Chevron* deference in reaching its holding.  *Olmstead*, 527 U.S. at 597-98.

## CONCLUSION

For the reasons set forth above, this case presents no occasion for the Court to reconsider, let alone repudiate, the settled understanding of Title II of the ADA and Section 504 of the Rehabilitation Act. This Court should accordingly set aside Defendants' Notice and need not consider the Supreme Court's recent decision in *Loper Bright* in order to rule on summary judgment.

Date: August 2, 2024                    Respectfully submitted,

                                        */s/ Jessica C. Wilson*
                                        Jessica C. Wilson (GA #231406)
                                        DLA PIPER LLP (US)
                                        33 Arch Street, 26th Floor
                                        Boston, MA 02110-1447
                                        Tel. 617-406-6000
                                        Fax 617-406-6100
                                        jessica.wilson@us.dlapiper.com

                                        Christopher G. Campbell (GA #789533)
                                        DLA PIPER LLP (US)
                                        One Atlantic Center
                                        1201 West Peachtree Street, Suite 2800
                                        Atlanta, GA 30309-3450
                                        Tel. 404-736-7800
                                        christopher.campbell@us.dlapiper.com

                                        Elissa S. Gershon (Pro Hac Vice)

11

Kathryn J. Walker (Pro Hac Vice)
CENTER FOR PUBLIC
REPRESENTATION
5 Ferry Street, #314
Easthampton, MA 01027
Tel. 413-586-6024
mmurphy@cpr-ma.org

Megan E. Schuller (Pro Hac Vice *to be filed*)
Ira A. Burnim (Pro Hac Vice)
BAZELON CENTER FOR MENTAL
HEALTH LAW
1101 15th Street, N.W., Suite 1212
Washington, D.C. 20005
Tel. 202-467-5730
megans@bazelon.org
irabster@gmail.com

Devon Orland (GA #554301)
GEORGIA ADVOCACY OFFICE
1 West Court Square
Decatur, GA 30030
Tel. 404-885-1234
dorland@thegao.org

Craig Goodmark (GA #301428)
GOODMARK LAW FIRM
1425 A Dutch Valley Place
Atlanta, GA 30324
Tel. 404-719-4848
cgoodmark@gmail.com

Shira Wakschlag (Pro Hac Vice)
THE ARC OF THE UNITED
STATES

1825 K Street, N.W., Suite 1200
Washington, D.C. 20006
Tel. 202-534-3708
wakschlag@thearc.org

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the

Clerk of Court using the CM/ECF No. system on this 2nd day of August, 2024.


*/s/ Jessica C. Wilson*